[No. 56878-2. En Banc. September 27, 1990.]

AMERICAN MOBILE HOMES OF WASHINGTON, INC., *Respondent,* v. SEATTLE–FIRST NATIONAL BANK, *Petitioner.*

308

*Davis Wright & Jones,* by *Craig Miller* and *Donald S. Kunze,* for petitioner.

*Sampson Wilson & Combs, Inc., P.S.,* by *Loren D. Combs* and *Susan Rae Sampson,* for respondent.

BRACHTENBACH, J.—Two questions are presented. May a superior court consolidate two cases where one is pending in another county? May a superior court transfer to itself a case which is pending in another county?

American Mobile Homes of Washington (American) brought an action against Seattle–First National Bank (Seattle–First) in Pierce County Superior Court. Seattle–First sued American and several of American's officers in King County Superior Court. Both actions center around the parties' retail financing agreements which were personally guaranteed by three of American's officers. These guaranties, but not the underlying financing agreements, set venue of any disputes in King County. On American's motion, the Pierce County Superior Court ordered the two cases consolidated and set venue in Pierce County.

We reverse the order of the trial court. We hold that a superior court does not have the power to consolidate cases

where one of the cases is not pending before it. A superior court also does not have the power to transfer to itself a case pending in a different county.

We also hold that the "priority of action" rule does not require that these cases be heard in Pierce County. The venue selection clauses together with other equitable considerations require that these cases be heard in King County. Therefore, we also reverse the trial court's denial of Seattle–First's motion to dismiss for improper venue. We remand the case to the Pierce County Superior Court for transfer to King County Superior Court.

The financial relationship between Seattle–First National Bank and American Mobile Homes[1] dates back to the early 1970's. Seattle–First extended a retail financing line to American and entered into "full recourse agreements" with American. Pursuant to these agreements Seattle–First purchased installment sales contracts from American, reserving the right to proceed against American when a customer defaulted. Three of American's officers personally guaranteed these full recourse agreements. Each guaranty agreement contained a provision which stated, "[A]t Bank's option, the venue (location) of any suit to enforce this agreement may be in King County, Washington."

In the fall of 1988 the parties' relationship broke down. American repudiated its obligations under the full recourse agreements because American believed Seattle–First had wrongfully carried out its obligations under the agreements. On February 10, 1989, Seattle–First sent American a letter demanding that, by the close of business on February 17, 1989, the company honor the recourse obligations then in default.

Instead of responding to Seattle–First's demands, American filed an action against Seattle–First in Pierce County Superior Court on February 17, 1989, claiming relief under contract and tort theories. American seeks to have the

---

[1]Various predecessor companies merged to form American in 1987. Where applicable, we intend to include those companies when we refer to American.

recourse provisions declared unenforceable. American alleges that Seattle–First improperly handled the full recourse contracts and breached various promises Seattle–First had made to American. If it was not for these alleged promises, American claims it would not have entered into the full recourse agreements, nor would the guarantors have agreed to guarantee American's performance.

Specifically, American alleges that Seattle–First wrongfully increased American's potential exposure under the recourse provisions by changing its customer practices with respect to credit checking and collection procedures and making statements to customers to encourage their default. American also alleges that Seattle–First improperly administered the accounts, that Seattle–First failed to properly notify American of account defaults, and that Seattle–First established a repossession system in competition with American's business.

Less than 4 hours after American filed its action in Pierce County, Seattle–First filed an action in King County Superior Court against American and several of its officers as guarantors of the full recourse contracts. Seattle–First seeks enforcement of the repudiated agreements and damages resulting from breach of the full recourse agreements. Seattle–First alleges that American refused to respond to its demand letter of February 10, 1989, and instead filed its action in Pierce County as a "preemptive strike" against the action it anticipated Seattle–First would file in King County.

In Pierce County Superior Court American moved to consolidate the two actions and to set venue in Pierce County. Seattle–First opposed this motion and filed a cross motion for dismissal of the Pierce County action on the ground that venue was improper. The trial court granted American's motion, and ordered consolidation of the two cases and set venue in Pierce County. The trial court denied Seattle–First's cross motion for dismissal.

The Court of Appeals granted Seattle–First's motion for discretionary review. This court accepted certification of this case from the Court of Appeals.

We first consider whether a superior court may consolidate a case pending before it with a case which is pending in the superior court of a different county. Next we consider whether a superior court may transfer the venue of a case from another county to itself. Finally, because these cases should be heard together,[2] we consider whether venue should be set in Pierce County because it was the county in which suit was first filed or in King County because some but not all of the parties previously agreed to King County venue.

RCW 4.12.030 provides for transfer of venue. However, the trial court did not expressly transfer the King County action pursuant to the venue transfer statute. Instead, the trial court first consolidated the cases pursuant to CR 42(a) and then set venue of the consolidated action in Pierce County. Despite this express procedure set out in the trial court's order, American argues that the court impliedly transferred the King County action to Pierce County before consolidating the cases. Although we are not convinced that the trial court's language supports American's argument, we examine whether the trial court's result could be sustained under either the consolidation or the transfer theory. Therefore, we discuss, in turn, the power of the superior court to do both.

### CONSOLIDATION

Whether a superior court may consolidate cases pending in different counties is a case of first impression in Washington. In Washington, cases may be consolidated pursuant to CR 42(a), which provides in part:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of

---

[2]The parties agree, as did the trial court, that the actions should be heard together.

any or all the matters in issue in the action; it may order all the actions consolidated; . . . .

 This rule provides the procedure for consolidation of cases "pending before the court." Only if the various counties' superior courts are viewed as a single superior court of the State of Washington would cases pending in superior courts of different counties be "pending before *the* court," thus authorizing consolidation under CR 42(a). Neither the state constitution nor the statutes creating the superior courts support such a characterization. Both the constitutional provisions and the statutes pertaining to superior courts refer to multiple courts. *See* Const. art. 4, §§ 1, 5 ("The judicial power of the state shall be vested in . . . superior court*s* . . .. There shall be in *each* of the organized counties of this state *a* superior court . . ."). (Italics ours.) *See also, e.g.,* RCW 2.08.030 ("The superior court*s* are court*s* of record . . .."). (Italics ours.) Under the language of the constitution and the statutes, there is no single superior court. Actions pending before the superior courts of different counties are not "pending before *the* court."

 This conclusion is supported by analogous federal law. When a state rule is similar to a parallel federal rule we sometimes look to analysis of the federal rule for guidance. *American Discount Corp. v. Saratoga West, Inc.,* 81 Wn.2d 34, 37, 499 P.2d 869 (1972). Of course we will follow federal analysis only to the extent we find federal reasoning persuasive. *Orwick v. Seattle,* 103 Wn.2d 249, 255, 692 P.2d 793 (1984). Here, federal cases interpreting Fed. R. Civ. P. 42(a), which is identical to CR 42(a), are instructive.

Federal courts do not allow consolidation of causes of action pending in different federal districts, reasoning that actions pending before different district courts cannot be considered "pending before the court" as required by Fed. R. Civ. P. 42(a). *Swindell–Dressler Corp. v. Dumbauld,* 308 F.2d 267, 273 (3d Cir. 1962); *National Equip. Rental, Ltd. v. Fowler,* 287 F.2d 43, 47 (2d Cir. 1961); *Warwick, N.Y. v. New Jersey Dep't of Envtl. Protec.,* 647 F. Supp.

1322, 1324–25 (S.D.N.Y. 1986); *Popkin v. Eastern Air Lines, Inc.,* 253 F. Supp. 244, 249 (E.D. Pa. 1966); *Silver v. Goodman,* 234 F. Supp. 415, 416 (D. Conn. 1964).

American also cites Const. art. 4, § 6 and *State ex rel. Gough v. Superior Court,* 137 Wash. 552, 243 P. 11 (1926) as authority for the consolidation. Article 4, section 6 provides only that the "process [of the superior courts] shall extend to all parts of the state." *Gough* holds only that the process of the superior court "may issue to any county in the state for the purpose of bringing in a party to an action or proceeding." *Gough,* at 555–56. Contrary to American's theory, the "process" used to compel witnesses and parties to submit to a superior court's jurisdiction does not authorize one superior court to compel another superior court to relinquish jurisdiction over a case pending therein.

Therefore, relying upon the express language of CR 42(a) and persuasive federal authority, we hold that a superior court cannot consolidate a case pending in another county with a case pending before it. This holding does not prevent parties from stipulating to the transfer of all actions to a single county after which the parties may stipulate to consolidation of multiple actions consistent with CR 42(a).

VENUE TRANSFER

Next we consider a trial court's power to transfer to itself the venue of a case which is pending in a different superior court. RCW 4.12.030(3) authorizes changes of venue where "the convenience of witnesses or the ends of justice would be forwarded by the change". Seattle–First argues that under the venue transfer statute any motion for change of venue of a King County action must be made to the King County court, a principle which Seattle–First contends was expressly recognized in *Russell v. Marenakos Logging Co.,* 61 Wn.2d 761, 380 P.2d 744 (1963) and *North Bend Lumber Co. v. Seattle,* 147 Wash. 330, 266 P. 156 (1928). We agree.

In *Russell* we acknowledged that a court in which an action has been commenced may consider a change of

venue motion. *Russell,* at 766. In *North Bend Lumber,* we held that a change of venue motion, which was properly made pursuant to one of the methods permitted by venue statutes, was effective in giving jurisdiction to the court to which the transfer was made. *North Bend Lumber,* at 337. While *Russell* and *North Bend Lumber* discuss the typical context of venue transfer motions, they do not resolve the issue here.

Nor is the issue resolved by any of the numerous cases cited by Seattle–First in which the motion for change of venue was made in the court before whom the action was pending. *E.g., Myers v. Harter,* 76 Wn.2d 772, 459 P.2d 25 (1969). These cases do nothing more than illustrate the typical venue transfer scenario in which only one action is pending in county A and the parties seek transfer from county A to another county. These cases do not address which county can entertain the change of venue motion when there are duplicative cases pending in multiple counties.

Even the several cases cited by Seattle–First which did involve multiple actions pending in different counties do not address whether a court may transfer a case which is pending in another county. *See, e.g., Clampitt v. Thurston Cy.,* 98 Wn.2d 638, 658 P.2d 641 (1983); *State ex rel. Furey v. Superior Court,* 191 Wash. 235, 70 P.2d 1043 (1937). Again, these cases illustrate only that the sending court may transfer a case to another jurisdiction, but do not address whether a receiving court may initiate the transfer.

The venue statutes, RCW 4.12, also do not address where change of venue motions may be brought. Although none of the language expressly precludes a court from transferring to itself a case pending in another county, we conclude that the statutes do not contemplate such action.

■ Again, we find the reasoning of federal courts considering a similar question persuasive. A federal district court may not transfer to itself a case which is pending in

another federal district court. *National Equip. Rental, Ltd. v. Fowler, supra.* The Second Circuit said that the

> language [of the federal transfer statutes] presupposes that the action to be transferred is pending in the transferor court. The administration of justice would be chaotic indeed if one district court could order another to divest itself of jurisdiction and to transfer a case properly before it.

*National Equip. Rental,* at 46–47. *See also Swindell–Dressler Corp. v. Dumbauld, supra* at 273 (concluding that a court has no jurisdiction to transfer a case from another jurisdiction to itself). We agree with the federal courts that have considered this question that to permit a court to divest another court of jurisdiction over a case pending in the second court has the potential to create chaos in our court system. This is because to allow one superior court this much control would ignore the practical considerations venue brings to a lawsuit. It would also ignore the principles of venue determination recognized in our statutes, court rules, and case law. Therefore, we hold that a superior court may not transfer to itself a case which is pending in another county.

### "PRIORITY OF ACTION" RULE

American next argues that a "priority of action" rule authorized the Pierce County court to consolidate the multi–county cases and to transfer the King County case to Pierce County. We have recognized that

> [i]t is an accepted principle that, when a court of competent jurisdiction has become possessed of a case, its authority continues, subject only to the appellate authority, until the matter is finally and completely disposed of, and no court of co–ordinate authority is at liberty to interfere with its action.

*State ex rel. Greenberger v. Superior Court,* 134 Wash. 400, 401, 235 P. 957 (1925). This court has further explained this doctrine as follows:

> [T]he court which first gains jurisdiction of a cause retains the exclusive authority to deal with the action until the controversy

is resolved. The reason for the doctrine is that it tends to prevent unseemly, expensive, and dangerous conflicts of jurisdiction and of process. *Sherwin v. Arveson*, 96 Wn.2d 77, 80, 633 P.2d 1335 (1981).

American contends that this doctrine authorizes the first–in–time court to protect its jurisdiction by reaching into another court and transferring a later–in–time filed case from that other jurisdiction and consolidating it with the first–filed case. The rule provides generally that the first court to obtain jurisdiction over a case possesses exclusive jurisdiction to the exclusion of other coordinate courts. However, the rule should not be automatically applied each time two similar cases are pending in different counties. For instance, as discussed more fully below, there must be identity of subject matter, relief, and parties between the actions before the priority rule should be applied. *Sherwin*, at 80.

While the cases upon which American relies establish a general "priority rule," they do not establish how a trial court may enforce this "rule." However, the means of enforcing the rule are not without limitation.

The methods approved by federal courts for enforcing a similar "priority rule" provide useful guidance. Significantly, none of those methods includes a court directly interfering with a case pending in another court of coordinate jurisdiction. *Swindell–Dressler Corp. v. Dumbauld, supra; National Equip. Rental, Ltd. v. Fowler, supra.* Instead, where appropriate, the "priority rule" is enforced either by the first court enjoining its parties from further action in the second court, or by the second court dismissing or staying the proceedings pending in the second court. *See, e.g., Martin v. Graybar Elec. Co.,* 266 F.2d 202 (7th Cir. 1959); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 893 F.2d 26, 28–29 (2d Cir. 1990) (an injunction by the first court is appropriate "if the claims presented in the second action should have been interposed as compulsory counterclaims to the claims in the suit pending before it"); *see generally* Annot., *Effect of Filing as Separate Federal Action Claim That Would Be Compulsory Counterclaim in*

*Pending Federal Action*, 81 A.L.R. Fed. 240 (1987); Annot., *Propriety of Injunction by Federal Court in Civil Action Restraining Prosecution of Later Civil Action in Another Federal Court Where One or More Parties or Issues Are, or Allegedly Are, Same*, 42 A.L.R. Fed. 592 (1979).

■ American argues, however, that because the Pierce County trial court would have had authority to enjoin prosecution of the King County case, that authority should also sustain the consolidation and transfer orders which brought about the same result. The Seventh Circuit in *Martin v. Graybar Elec. Co., supra,* has explained the flaw in this reasoning. It is incorrect to refer interchangeably to enjoining another court from acting and enjoining a party from prosecuting an action. An injunction is directed at a *party* who is presently subject to the court's powers; it is not directed at another court. The injunction prohibits the *party* from further prosecution of a suit in another jurisdiction under the theory that the *party* is misusing that other jurisdiction. *Martin*, at 203–04 (quoting *Steelman v. All Continent Corp.,* 301 U.S. 278, 291, 81 L. Ed. 1085, 57 S. Ct. 705 (1937)). Manifestly, the Pierce County Superior Court has no authority to enjoin the King County Superior Court from hearing an action pending before it.

■ We hold that the priority rule does not authorize a superior court to make rulings in cases pending in other superior courts. The Pierce County Superior Court could have dismissed the action pending before it, allowing the parties to bring a venue transfer motion in King County. Alternatively, the Pierce County Superior Court could have enjoined Seattle–First from prosecuting the King County action. However, the Pierce County Superior Court could not enforce the "priority rule" by directly interfering with the case pending in the King County Superior Court as it did here.

Finally, American argues that the trial court's actions to preserve its jurisdiction were authorized under CR 77(k), CR 16(a)(2), (5), and *Silver Surprize, Inc. v. Sunshine Mining Co.,* 74 Wn.2d 519, 445 P.2d 334 (1968). American

does not explain how these rules and this case give a trial court the power to act in a case pending in a different county. These rules and this case do not resolve the issue presented.

In conclusion, we hold that the trial court did not have authority to order the consolidation or transfer.

### SEATTLE–FIRST'S MOTION TO DISMISS

Next we turn to the court's order denying Seattle–First's motion to dismiss for improper venue. Both parties and the trial court agree that these two actions should be resolved in a single court. In favor of Pierce County is a priority of several hours in filing. In favor of King County are the venue agreements between some, but not all, of the parties to the dispute.

While the priority rule may not be enforced as was attempted here, the rule might still dictate that the cases should be heard in Pierce County. Although Seattle–First concedes the general validity of a "priority" rule, Seattle–First argues that here the rule should not determine in which court the actions should be resolved. Seattle–First maintains that the rule applies primarily to special types of actions such as in rem actions, guardianships, and other actions under specific statutes. Next, Seattle–First contends that even if the rule applies to more than those limited types of actions, it cannot apply here because, Seattle–First maintains, there are not the requisite identities between the two actions. Finally, Seattle–First argues that the rule is only a general rule which should not be invoked when the first action is filed as a "preemptive strike" in anticipation of another's lawsuit.

As to Seattle–First's first contention, although Seattle–First is correct that the "priority rule" has been applied by this court in special types of actions such as guardianships and in rem actions, nothing in those cases suggests that the rule was intended to apply only to those special scenarios. *See, e.g., State ex rel. Greenberger v. Superior Court, supra.*

■■ In regard to Seattle–First's second contention, Seattle–First is correct that the "priority rule" is

generally applicable only when the cases involved are identical as to subject matter, parties and relief. This identity must be such that a final adjudication of the case by the court in which it first became pending would, as res judicata, be a bar to further proceedings in a court of concurrent jurisdiction.

*Sherwin v. Arveson,* 96 Wn.2d at 80. In *Sherwin* we found some of these requisite identities lacking when we compared a 14–day involuntary mental health treatment detention proceeding with a subsequent 90–day detention proceeding. There, although the subject matter may have been the same, the relief sought was different and therefore the "priority rule" did not apply. *Sherwin,* at 80.

Here, there is no identity of subject matter, relief, or parties. The subject matter and relief sought overlaps because both American and Seattle–First seek a determination of the validity of the recourse provisions. American, however, seeks various other forms of relief. As to the difference in parties, American did not include the individual guarantors as parties to its action. We find American's motives for not joining the individual guarantors questionable in light of American's request to join the individual guarantors immediately following the trial court's order consolidating the cases. The res judicata effect on the issue of the effect of the recourse agreements is also questionable because the guarantors were not parties to American's action.

We conclude that because the identities announced in *Sherwin* are not all present, the priority rule should not be applied without consideration of other factors. This brings us to Seattle–First's third contention.

Seattle–First argues that American should not be permitted to bring an action in another county as a "preemptive strike" in anticipation of Seattle–First's action. Seattle–First contends that upon receipt of its letter of February 10, 1989, American quickly filed its case for the purpose of avoiding Seattle–First's action in King County.

In essence, Seattle–First argues that consideration of American's allegedly improper motives for filing its action militates against giving preference to American's priority in filing.

Seattle–First's argument sounds much like the approach taken by some federal courts which do not blindly apply a "first–filed, first prevails" rule. Instead, many courts give the trial court discretion to take into account "countervailing equitable considerations". *Columbia Plaza Corp. v. Security Nat'l Bank*, 525 F.2d 620, 627–29 (D.C. Cir. 1975); *Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co.*, 342 U.S. 180, 96 L. Ed. 200, 72 S. Ct. 219 (1952) (even though a declaratory judgment action is filed first, where equitable factors dictate, it may be enjoined pending resolution of another action surrounding the same issues); *see also Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979).

Here we find several countervailing equitable considerations militating against automatic application of the priority rule. Most significant are the agreements between American's officers and Seattle–First setting venue in King County.

Venue agreements have long been given effect in this state. *Mangham v. Gold Seal Chinchillas, Inc.*, 69 Wn.2d 37, 416 P.2d 680 (1966); *State ex rel. Schwabacher Bros. & Co. v. Superior Court*, 61 Wash. 681, 112 P. 927 (1911); *Bechtel Civil & Minerals, Inc. v. South Columbia Basin Irrig. Dist.*, 51 Wn. App. 143, 752 P.2d 395 (1988). However, the fact that the venue agreements were between some, but not all, of the parties precludes automatic enforcement of the agreements. *Cf. State ex rel. Electrical Prods. Consol. v. Superior Court*, 11 Wn.2d 678, 679, 120 P.2d 484 (1941); *State ex rel. Lund v. Superior Court*, 173 Wash. 556, 558, 24 P.2d 79 (1933) (both holding that a wife was not bound by a venue agreement signed only by the husband); *see also Dyersburg Mach. Works, Inc. v. Rentenbach Eng'g Co.*, 650 S.W.2d 378, 380 (Tenn. 1983)

("[c]ourts which recognize the validity of forum selection clauses generally, nevertheless, have refused to enforce them against third parties who did not agree to the contract containing such clause and are not parties to the agreement"). Because not all the parties to the action are parties to the agreement, the agreement will not be subject to mandatory application but instead the partial agreement will be one of several factors to be considered by the trial court in determining where venue should lie and whether to give preference to the action filed first in time.

Other factors to be considered may relate to the convenience of witnesses and the interests of justice. *See* RCW 4.12.030(3). For example, here, the trial court apparently believed that this case could be resolved 1 to 3 years faster in Pierce County than in King County. Other relevant considerations are the allegation that American filed its action as a preemptive strike and the likelihood that American did not join the guarantors as plaintiffs for the purpose of avoiding King County venue although the guarantors, who are officers of American, certainly stand to benefit if American avoids enforcement of the recourse obligations and underlying guaranties.

We do not find the "time to trial" factor very persuasive. We do, however, find it very likely that American filed its action in Pierce County and did not include the individual officers as parties in the action for the purpose of avoiding King County venue.

Taking all these factors into account, we are convinced that these cases should be tried in King County rather than Pierce County. We reverse the trial court's order denying Seattle–First's motion for dismissal of the Pierce County action and remand to the Pierce County Superior Court. The trial court may either dismiss the Pierce County action, so that those claims may be brought as counterclaims in the King County case, or transfer venue of the Pierce County action to King County so that the cases may be consolidated and tried in King County.

To summarize, we hold that a superior court may not consolidate cases pending in different counties, nor may a superior court transfer to itself a case pending in another county. We reverse the trial court's order consolidating the cases and setting venue in Pierce County.

When nearly identical cases are brought in different counties, a motion to transfer must be brought in the court in which the case sought to be transferred is pending. Alternatively, a party may seek an order enjoining other parties from prosecuting a case pending elsewhere. When determining whether to grant a motion to transfer or enjoin parties from further prosecution of a case pending elsewhere, we do not adopt a bright line rule favoring the case first filed. Instead, in addition to the priority of action rule, the trial court should consider various equitable factors such as the convenience of witnesses and the interests of justice, the parties' possible motivations for their filing decisions as determined from the surrounding circumstances, and the presence of venue agreements between some but not all of the various parties.

Reversed and remanded.

CALLOW, C.J., and UTTER, DOLLIVER, DORE, ANDERSEN, DURHAM, SMITH, and GUY, JJ., concur.