153 P.3d 211 (2007)
ATLANTIC CASUALTY INSURANCE COMPANY, a foreign corporation, Respondent,
v.
OREGON MUTUAL INSURANCE COMPANY, a foreign corporation; Petitioner,
Gordon and Audrey Chase, husband and wife; and Benjamin and "Jane Doe" Starkweather, husband and wife, Defendants.
No. 33733-9-II.
Court of Appeals of Washington, Division 2.
February 13, 2007.
*213 Gary A. Sparling, Soha & Lang PS, Seattle, WA, for Petitioner.
Gregory Brian Curwen, Mark J. Dynan, Gierke Curwen Metzler & Erie PS, Donald Louis Anderson, Attorney at Law, Tacoma, WA, for Respondent.
BRIDGEWATER, P.J.
¶ 1 This case presents a narrow legal question about whether the trial court should have granted summary judgment under the priority of action rule. Oregon Mutual Insurance Company (OMI) filed a garnishment action seeking to establish that Atlantic Casualty Insurance Company's (Atlantic) insurance policy covered Starkweather Roofing. Eight months after OMI filed the writ of garnishment, Atlantic filed a declaratory judgment seeking to establish that Atlantic did not have to pay under its policy. OMI moved to dismiss the declaratory judgment action, arguing that the garnishment action would resolve that issue. The trial court refused to grant summary judgment under the priority of action rule. We granted review of the trial court's summary judgment decision as an interlocutory appeal under RAP 2.3(b)(4). We reverse and remand to the trial court for entry of an order granting summary judgment in favor of OMI.

FACTS
¶ 2 The underlying facts in this case involve a leaky roof. In November 2002, Gordon and Audrey Chase hired Benjamin Starkweather, doing business as Starkweather Roofing, to install a roof on their Puyallup home. Starkweather performed his work negligently, and the Chases' house suffered significant water intrusion and property damage.
¶ 3 After the roof damaged the Chases' house, (OMI), the Chases' homeowners' insurance company, became involved. The Chases apparently filed a claim against their homeowners' insurance because OMI paid for the repairs to the house. Thus, via subrogation, OMI acquired an interest in litigation between the Chases and Starkweather.
¶ 4 And litigation inexorably followed. On October 23, 2003, the Chases sued Starkweather alleging that he had breached their contract and had negligently installed the roof. Apparently, Starkweather failed to appear to defend the lawsuit and, on February 9, 2004, the Chases obtained a default judgment in the amount of $240,750.55, plus ancillary costs.
¶ 5 OMI took the lead in enforcing the judgment. On June 24, 2004, OMI filed a writ of garnishment against Atlantic, Starkweather's general liability insurer, alleging that Atlantic owed Starkweather money under Starkweather's general liability insurance policy. In order to establish OMI's interest in Atlantic's potential payment to Starkweather, the writ identified four parties: Atlantic as the garnishee, Starkweather as the defendant, the Chases as the plaintiffs, and OMI as the subrogee/assignee of the Chases' claim.
¶ 6 Although Starkweather had failed to defend the lawsuit, and after OMI filed the writ of garnishment, Atlantic launched a vigorous defense both on its own and on Starkweather's behalf. First, Atlantic hired an attorney for Starkweather. Starkweather, through his attorney, moved to vacate the default judgment.[1] Second, Atlantic filed a response in the garnishment action, alleging that the default judgment was invalid because there had been improper service and that Starkweather had breached his insurance contract by failing to notify Atlantic of the Chases' lawsuit.
¶ 7 In addition to defending the garnishment, Atlantic also decided to file a suit of its own. Thus, eight months after OMI filed the *214 writ, Atlantic filed a declaratory judgment action seeking to have the trial court declare that Starkweather had not received proper notice of the Chases' lawsuit and that Starkweather had violated the insurance contract. The declaratory judgment action named OMI, the Chases, and Starkweather as defendants.
¶ 8 The result of Atlantic's efforts produced a complex procedural background for this case. By early 2005, several actions were pending on this matter: (1) the default judgment in the Chases' underlying lawsuit against Starkweather; (2) the writ of garnishment against Atlantic; and (3) Atlantic's declaratory judgment action.
¶ 9 In light of the duplicative litigation, on June 15, 2005, OMI moved to dismiss Atlantic's declaratory judgment action under the priority of action rule. The trial court struck OMI's motion for procedural reasons, and OMI refiled the motion as a motion for summary judgment. The trial court eventually denied OMI's motion for summary judgment. But the trial court did certify the question for an interlocutory appeal under RAP 2.3(b)(4). We accepted review on the issue of whether the priority of action rule applies in this case.

ANALYSIS

I. Priority of Action
¶ 10 OMI argues that because the garnishment action involves identical parties, subject matter, and relief, the trial court should have dismissed the declaratory judgment action. Specifically, OMI contends that the garnishment action will resolve the issue of whether Atlantic owed any money to Starkweather under his insurance policy, thus rendering Atlantic's declaratory judgment action seeking to establish the legal rights of the parties under that policy superfluous. We agree with OMI.
¶ 11 The priority of action rule is a principle that courts use to avoid unseemly and expensive jurisdictional conflicts. Am. Mobile Homes, Inc. v. Seattle-First Nat'l Bank, 115 Wash.2d 307, 317, 796 P.2d 1276 (1990) (citing Sherwin v. Arveson, 96 Wash.2d 77, 80, 633 P.2d 1335 (1981)). The rule provides that the first court to obtain jurisdiction over a case possesses exclusive jurisdiction to the exclusion of other coordinate courts. Am. Mobile, 115 Wash.2d at 317, 796 P.2d 1276. That jurisdiction lasts, "subject only to appellate authority, until the matter is finally and completely disposed of." Am. Mobile, 115 Wash.2d at 316, 796 P.2d 1276 (quoting State ex rel. Greenberger v. Superior Court, 134 Wash. 400, 401, 235 P. 957 (1925)).
¶ 12 The rule only applies, however, where there is identity of subject matter, relief, and parties between the two actions. Am. Mobile, 115 Wash.2d at 317, 796 P.2d 1276. This identity between the actions must be such that a decision in one court would, as res judicata, bar further proceedings in the other court. Yakima v. Int'l Ass'n of Fire Fighters, 117 Wash.2d 655, 675, 818 P.2d 1076 (1991). If the identity of the parties is not exact, the trial court may consider various equitable factors, such as the convenience of witnesses, the interests of justice, the parties' possible motivations for their filing decisions, and the presence of venue agreements. Am. Mobile, 115 Wash.2d at 320-21, 796 P.2d 1276.
¶ 13 We must first determine the appropriate standard of review. We review legal questions like res judicata and a superior court's jurisdiction de novo. Lynn v. Dep't of Labor & Indus., 130 Wash.App. 829, 837, 125 P.3d 202 (2005) (res judicata); Conom v. Snohomish County, 155 Wash.2d 154, 157, 118 P.3d 344 (2005) (jurisdiction). As the priority of action rule involves jurisdiction and res judicata principles, de novo review is appropriate. Moreover, we review a denial of a summary judgment issue de novo. Hertog v. City of Seattle, 138 Wash.2d 265, 275, 979 P.2d 400 (1999). We therefore review this issue de novo.
¶ 14 Turning to whether the priority of action rule applies in this case, we examine whether there is identity of parties, subject matter, and relief between the garnishment and declaratory judgment actions. Then, we examine whether resolution of the issues in either the garnishment or the declaratory *215 judgment action would be a binding resolution on all of the parties.
¶ 15 We hold that the identity of party requirement is met. The writ of garnishment names Atlantic, Starkweather, the Chases, and OMI as parties, and the declaratory action names OMI, the Chases, and Starkweather as defendants. Thus, the parties in these two cases are identical.
¶ 16 But Atlantic argues that the subject matter of the two actions differs because garnishment involves compelling payment and the declaratory judgment involved construing the contract. We reject this argument. The underlying subject matter is identical. In applying the subject matter requirement in Yakima v. International Association of Fire Fighters, our Supreme Court looked to the "issue in controversy" in both cases to determine whether the subject matter was identical. Yakima, 117 Wash.2d at 676, 818 P.2d 1076. In this case, both actions involve precisely the same issue in controversywhether Atlantic owes payment to Starkweather. It is not relevant that in one action Atlantic might be ordered to pay while the other might result in a declaration that Atlantic does or does not have to pay. Either way, the subject matter is the same.
¶ 17 The central controversy in this case is whether relief is the same in both actions. In both actions, OMI is seeking to compel Atlantic to pay Starkweather under his liability insurance policy. In both actions, Atlantic is seeking a judgment that it is not liable under Starkweather's policy. Although stated from opposite perspectives, the relief is the same.
¶ 18 Atlantic seeks to avoid this conclusion by arguing that the garnishment court failed to interpret Atlantic's insurance policy and could not therefore offer the same relief as a declaratory judgment action. Assuming the Supreme Court affirms our opinion[2] upholding the default judgment against Starkweather, Atlantic's contract with Starkweather will be an issue for the garnishment court. In fact, Atlantic has already raised contractual defenses in the garnishment action. Thus, in order to determine whether Atlantic has an obligation to pay, the garnishment court will have to interpret the contract.
¶ 19 Even if Atlantic is correct that the garnishment court refused to interpret the contract in this case, Atlantic's argument represents the precise reason that the priority-of-action rule exists. Atlantic is asking a second superior court to rule that the garnishment court committed a legal error by not considering the contract. This is the unseemly and expensive jurisdictional conflict that the priority-of-action rule is designed to avoidone superior court trying to correct another. If the garnishment court erroneously decides to omit key evidence, Atlantic's remedy is to file an appeal with the proper appellate court, not to file another action hoping to get a better result.
¶ 20 Atlantic next asserts that it may not be able to raise all relevant defenses in the garnishment action. Atlantic is incorrect. An insurance company's obligation under a liability policy is subject to garnishment. 1A KELLY KUNSCH, WASHINGTON PRACTICE: METHODS OF PRACTICE § 50.7, at 347 (4th ed.1997) (citing Wood v. Kok, 58 Wash.2d 12, 16, 360 P.2d 576 (1961) (affirming a trial court's judgment against an insurance company in a garnishment action)). The theory behind this is that as soon as the garnishing creditor established the insured's liability, the insurance company was obligated to pay and therefore it is an asset that can be attached in a garnishment action. KUNSCH, § 50.7 at 347-48.
¶ 21 In the garnishment action, the garnishee insurance company, here, Atlantic, is entitled to raise any defense it had against its policy holder against the garnishing creditor. Burr v. Lane, 10 Wash.App. 661, 670, 517 P.2d 988 (1974). As the Burr court explained, the garnishing creditor's rights are "merely derivativeno greater than the insured's rights against the insurer on the insurance policy." Burr, 10 Wash.App. at 670, 517 P.2d 988. This specifically includes the right to raise the defense that an insured did not comply with a condition in the insurance contract requiring the insured to notify *216 the insurer of pending suits. James v. Ward, 6 Wash.App. 915, 921, 496 P.2d 555 (1972). We therefore hold that Atlantic may raise any defense it might have had against Starkweather in the garnishment action.
¶ 22 Atlantic next argues that a third party cannot sue an insurance company directly for bad faith. Atlantic is correct that a third party generally has no cause of action against an insurance company's breach of the duty of good faith to its insured. Tank v. State Farm Fire & Cas. Co., 105 Wash.2d 381, 393, 715 P.2d 1133 (1986). But it does not mean the garnishment court could not address the issue in this case.
¶ 23 OMI is not asserting bad faith as a cause of action against Atlantic. Instead, anticipating Atlantic's defense that Starkweather breached his contract and excused Atlantic from paying, OMI argued that Atlantic's bad faith estops Atlantic from denying coverage. In other words, the bad faith issue is not a separate cause of action, but an issue in Atlantic's defense. And that can be litigated in a garnishment action. See Burr, 10 Wash.App. at 671-72, 517 P.2d 988 (raising and dismissing a garnishment plaintiff's claim that the insurance company had waived its noncompliance defense by acting in bad faith).
¶ 24 And the judgment in the garnishment action would have full res judicata affect on the parties. Res judicata applies to all claims and issues that were or might have been litigated in prior action. Loveridge v. Fred Meyer, Inc., 125 Wash.2d 759, 763, 887 P.2d 898 (1995). It applies when there is a concurrence of identity in (1) subject matter, (2) cause of action, (3) persons and parties, and (4) the quality of the persons for or against whom the claim is made. Loveridge, 125 Wash.2d at 763, 887 P.2d 898. When these are met, the judgment is binding on all parties in the litigation and all persons in privity with those parties. Loveridge, 125 Wash.2d at 764, 887 P.2d 898. Here, Starkweather, the Chases, OMI, and Atlantic are all parties in the garnishment action. Thus, the judgment will bind them.
¶ 25 Atlantic next argues that the remedy allowed in the two actions is different because the garnishment statute does not allow a full trial. This statement is also incorrect. As OMI correctly observes, the garnishment statute does allow the superior court to have a trial if it determines that trial is necessary. RCW 6.27.220. Nor is Atlantic correct that a garnishment action cannot have a jury trial. The statute does not mandate a bench trial, and OMI points to several cases in which garnishment actions were decided by jury trials. See e.g., Van Dyke v. White, 55 Wash.2d 601, 604, 349 P.2d 430 (1960); Weber v. Biddle, 4 Wash.App. 519, 521-22, 483 P.2d 155 (1971).
¶ 26 Atlantic's most compelling argument is that the declaratory judgment action allows it to resolve its duty to defend Starkweather in a timely fashion. An insurance company has a duty to defend an insured in a lawsuit and this includes an obligation to pay for an independent attorney. Tank, 105 Wash.2d at 388-89, 715 P.2d 1133. Thus, here, if the policy covers Starkweather, Atlantic has to pay for his defense. If Atlantic does not defend him and the court determines that the policy did cover Starkweather, Atlantic will have breached the duty of good faith and would be exposed to additional liability. Truck Ins. Exch. v. VanPort Homes, Inc., 147 Wash.2d 751, 761, 58 P.3d 276 (2002); Murray v. Mossman, 56 Wash.2d 909, 911, 355 P.2d 985 (1960). Specifically, Atlantic may be exposed to liability beyond its policy limits if it acts in bad faith. See Murray, 56 Wash.2d at 911, 355 P.2d 985.
¶ 27 Thus, insurance companies are faced with a dilemma; they must defend an insured even where they believe their insured is not covered. It is for this reason that our courts allow insurance companies to file declaratory judgment actions while the underlying action is continuing. VanPort Homes, 147 Wash.2d at 761, 58 P.3d 276. If the insurance company wins the declaratory judgment action, it may safely stop defending its insured and avoid that expense. VanPort Homes, 147 Wash.2d at 761, 58 P.3d 276.
¶ 28 But this argument misses the point. Even if insurance companies can file declaratory judgment actions to determine coverage, this does not mean they are exempt from the priority-in-action rule. Here, the default *217 judgment has already established the underlying liability and the issue in the garnishment action is whether Atlantic was obligated to pay. In other words, in this case, the subject matter between the garnishment and the declaratory judgment is identicaldoes Atlantic have to pay under its policy? The relief, from Atlantic's perspective, is the same in both actions. If it defeats the garnishment action, then it will have binding judgment that it was not obligated to pay. Therefore, it does not need to file a separate declaratory judgment action. Allowing a defendant insurance company to select a forum because that court may reach judgment sooner may encourage the exact kind of conflict that the priority-of-action rule seeks to avoid. The garnishment action is a proper venue for resolving the issue in controversy and it was the first filed.
¶ 29 Thus, we hold that the garnishment court is fully capable of giving Atlantic the same remedy that a declaratory judgment would givea binding determination that Atlantic did not owe Starkweather under its policy. Therefore, there was an identity of parties, subject matter, and relief. Thus, the priority-of-action rule applied. The trial court erred in refusing to grant OMI's summary judgment motion seeking to dismiss the declaratory judgment action in favor of the garnishment action.
¶ 30 We note that if the Supreme Court accepts review of Starkweather's motion to vacate the underlying judgment and holds that the default was improper, then Atlantic will have suffered little prejudice as the garnishment action will fail.[3] At that point, Atlantic would need to evaluate its position regarding coverage. Should this circumstance develop, Atlantic may decide to defend Starkweather in the underlying suit and/or to file a declaratory judgment. But as the posture stands now, there is no reason that the garnishment action would not provide appropriate relief.

II. CR 11 Sanctions/RCW 4.84.185.
¶ 31 Finally, OMI asks this court to impose CR 11 sanctions and attorney fees under RCW 4.84.185. We reject these claims. The fact that Atlantic was successful before the lower court is an indication that this legal issue was not frivolous. Therefore, we deny OMI's request for fees and CR 11 sanctions.
¶ 32 Reversed and remanded for entry of summary judgment in favor of OMI.
We concur: ARMSTRONG and PENOYAR, JJ.
NOTES
[1] Although this appeal is concerned with the relationship between the writ of garnishment and the declaratory judgment action, the events in the underlying litigation are relevant as well. On March 11, 2005, the trial court denied Starkweather's motion to vacate the default judgment. Starkweather appealed the trial court's decision to this court, and we issued an opinion in April 2006 upholding the validity of the default judgment. Oregon Mut. Ins. Co. v. Starkweather, noted at 132 Wash.App. 1041, 2006 WL 1075169 at *4, 2006 Wash.App. LEXIS 776, at *12, LEXIS 1700. After a motion for reconsideration, that case is now before our Supreme Court on a petition for review.
[2] Starkweather, at *4, 2006 Wash.App. LEXIS 776, at *12.
[3] We note that the cases should have been consolidated in Pierce County under CR 42, but we recognize that the default judgment had proceeded more rapidly and was on appeal before consolidation could be initiated. At oral argument, both parties declined a stay pending the outcome in the Supreme Court on the petition for review. And, by our decision today, if Atlantic feels strongly about the rectitude of our decision, it can petition for review to the Supreme Court and move for consolidation with the earlier case.