IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of: the Estate of RAYMOND CLIFFORD HAGEN CREDIT EQUIVALENT TRUST | No. 85458-5-I |
| | DIVISION ONE |
| JAY HAGEN, Appellant, | UNPUBLISHED OPINION |
| v. | |
| ROBIN HAGEN VISNISKI, Respondent, | |
| PACIFIC RIDGE HOMES, Plaintiff, | |
| v. | |
| JAY HAGEN, Appellant, | |
| RICHARD RAYMOND HAGEN, FRED SCHOEN FIDUCIARY SERVICES, SOLE SUCCESSOR TRUSTEE OF RAYMOND CLIFFORD HAGEN EQUIVALENT TRUST, Respondents. | |

DÍAZ, J. — In this last of three Trust and Estate Dispute Resolution Act ("TEDRA") matters, Jay Hagen appeals a superior court order, which instructed the trustee to distribute real property in a manner he did not desire. On appeal,

Jay[1] argues the court's distribution order conflicts with an order from one of the prior-filed TEDRA actions, and thus violates a jurisdictional rule, called the priority of action rule. We disagree and, otherwise finding no error, we affirm.

## I.    BACKGROUND

Raymond Clifford Hagen created a trust which would be effective upon his death and which would benefit his wife, Phyllis Hagen, while she was alive. Upon Phyllis' passing, Raymond's descendants, Jay, Robin Visniski, and Richard Hagen, would split any remainder equally. The trust contained numerous pieces of real property. Repeated conflict between these siblings, including the filing of three separate TEDRA actions, has marked the administration of this trust.

Even before Phyllis' death in August 2021, Jay filed the first TEDRA petition ("*Hagen I*") in April 2021, accusing Robin who was a co-trustee of misconduct. In May 2022, the court issued an order ("*Hagen I* order"), removing Robin as co-trustee and appointing Schoen Trust Company ("STC") as sole-trustee.[2] Further, the court ordered the completion of a pending sale of one property, the sale of additional properties, and that, "[w]ithin thirty (30) days of closing of each of the real property transactions . . . STC [would] distribute the sale proceeds to the remainder beneficiaries[.]" Raymond's former residence would be awarded to Jay. According to STC, the beneficiaries universally opposed the distribution plan in the

---

[1] As some of the parties or other relevant persons share the same last name, we use their first names to minimize confusion. No disrespect is intended.

[2] "Schoen Trust Company" is the successor to "Fred Schoen Fiduciary Services," which is the party listed in the original caption. Washington Corporations and Charities Filing System, OFFICE OF THE SECRETARY OF STATE, https://ccfs.sos.wa.gov (last visited Feb. 21, 2024).

*Hagen I* order, and began negotiating an alternate arrangement to propose to the court.

Separately, Richard filed the second TEDRA petition ("*Hagen II*") in January 2023. He accused Jay of misconduct as co-trustee, a position he had held from 2013 to 2020, and brought claims of conversion, breach of fiduciary duty, waste and barratry, among others.

STC filed a third and final TEDRA petition ("*Hagen III*") in April 2023. In it, STC asked the court to issue instructions on distributing the trust property and listed two proposals from Robin and Jay. In other words, STC was asking for clarification on the *Hagen I* order in light of the beneficiaries' disapproval. STC's petition had followed months of failed mediation, which the parties had agreed to but which never went beyond the planning stages.[3]

Turning back to *Hagen II*, on May 5, 2023 the court issued an order ("*Hagen II* order"). In pertinent part, the court ordered the parties to mediate their disagreements within 150 days[4] and, in the meantime, barred distribution of trust assets "without written agreement of all beneficiaries or pursuant to *further order of the court*." (Emphasis added). Finally, the court ordered Jay to pay Richard's attorney fees.

---

[3] According to STC, and undisputed on appeal, "STC doggedly tried to schedule mediation and urged the beneficiaries to come to agreement as to how to sell and distribute the Trust-Owned Real Property[.]" These attempts included numerous emails and calls to the beneficiaries and their counsel between November 2022 and March 2023.

[4] As noted in STC's brief, "the beneficiaries have not engaged in the *Hagen II* mediation as required by the timing parameters set forth in the [*Hagen II* order] (by or before October 2, 2023). Instead the beneficiaries refused to schedule the mediation and it will likely require further litigation to compel the mediation."

And in *Hagen III*, on May 18, 2023 the court issued instructions distributing the trust's assets according to Robin's proposal ("*Hagen III* order") following a hearing.  The next month, the court denied Jay's motion for reconsideration and ordered Jay to pay attorney fees to STC.  Jay now appeals.

## II.      ANALYSIS

### A.      Priority of Action Rule

#### 1.  The Applicability of the Priority of Action Rule

Under the priority of action rule, "the court which first gains jurisdiction of a cause retains the exclusive authority to deal with the action until the controversy is resolved."  Sherwin v. Arveson, 96 Wn.2d 77, 80, 633 P.2d 1335 (1981).  The rule's purpose is "to prevent unseemly, expensive, and dangerous conflicts *of jurisdiction* and of process."  Am. Mobile Homes of Wash., Inc. v. Seattle-First Nat. Bank, 115 Wn.2d 307, 317, 796 P.2d 1276 (1990) (emphasis added).  Stated differently, parties are barred from "asking a *second* superior court" to resolve a matter, when the correct "remedy is to file an appeal with the proper appellate court, not to file another action hoping to get a better result."  Atlantic Cas. Ins. Co. v. Or. Mut. Ins. Co., 137 Wn. App. 296, 304, 153 P.3d 211 (2007) (emphasis added).  On appeal, we review the priority of action rule de novo.  State ex re. Evergreen Freedom Foundation v. Washington Educ. Ass'n, 111 Wn. App. 586, 605, 49 P.3d 894 (2002).

Jay here argues that "under the priority of action rule, [the *Hagen III* court] lacked jurisdiction to adjudicate distribution of Trust assets, which were subject to a separate, prior case between the parties and an injunction against distribution"

in *Hagen II*. More specifically, the parties disagree as to the applicability of the priority of action rule. STC argues that "for the priority of action rule to be implicated, there must be at least two forums involved." Jay argues that "attempts to limit [the rule] as such are inconsistent with the law."

We agree with STC and reaffirm that the priority of action rule only applies to sufficiently identical actions before different superior or "coordinate" courts. Am. Mobile Homes, 115 Wn.2d at 317-18 ("We hold that the priority rule does not authorize a superior court to make rulings in cases pending in *other superior courts*.") (emphasis added); Bunch v. Nationwide Mut. Ins. Co., 180 Wn. App. 37, 39, 321 P.3d 266 (2014) (the rule "generally requires that *the forum* that first gains jurisdiction over a matter retains exclusive authority over it.") (emphasis added); Frank Coluccio Constr. Co. v. King County, 3 Wn. App. 2d 504, 578, 416 P.3d 756 (2018) ("The priority of action rule does not automatically apply when parties file two similar cases in *different counties*.") (emphasis added). In other words, the scope of the priority of action rule does not extend to cases before different judges within the same court.[5]

---

[5] We so hold despite Division Two of this court applying the priority of action rule to a matter involving two cases within the same superior court. Atlantic Cas. Ins. Co. v. Or. Mut. Ins. Co., 137 Wn. App. 296, 307, 153 P.3d 211 (2007). That court, however, was not presented with, and did not address, the proper scope of the rule. Indeed, the court noted that "the cases should have been consolidated in Pierce County under CR 42." Id. at 308, n.3. In other words, cases in the same court that are similar enough for the priority of action rule should be resolved jointly through motions to consolidate, whether brought by the parties or sua sponte by the court. As Jay acknowledges, perhaps for this reason, there is a "dearth of reported decisions" applying the rule to cases proceeding within the same court. Finally, we note that, even if Atlantic Cas. Ins. Co. appears to stand for a contrary proposition (which we do not believe it does), it is not binding on this court. Matter of Arnold, 190 Wn.2d 136, 153, 410 P.3d 1133 (2018) ("[T]he divisions of the Court

In response, Jay also cites to our Supreme Court's enunciation of the priority of action rule in Sherwin, 96 Wn.2d at 80. The Sherwin court itself cited to a United States Supreme Court case released soon after the Civil War. Sherwin, 96 Wn.2d at 80 (citing Buck v. Colbath, 70 U.S. 334, 18 L. Ed. 257 (1865)). While not quoted or referenced in Sherwin, Jay relies on Buck's holding that "where the *officers of a court* . . . have taken possession of a *res* . . . the possession of such officers or court is exclusive." Buck, 70 U.S. at 337 (some alterations in original). In other words, according to Jay, this formulation of the rule makes clear that the rule applies to decisions by specific judges of a court. We find this argument unpersuasive.

First, Buck's usage of the word "officer" appears to be narrowly focused on courts utilizing law enforcement to carry out "a variety of writs, orders, or processes of the court," and is not intended to broadly define the contours of the modern priority of action rule. Id. at 342. Moreover, Jay's argument ignores Buck's reference to "another forum" and its repeated usage of "other courts[.]" Id. at 338, 341-46. As stated by Justice Miller, the "principle is, that whenever property has been seized by an officer of the court, by virtue of its process, the property is to be considered as in the custody of the court, and under its control for the time being; and that no *other court* has a right to interfere with that possession[.]" Id. at 341 (emphasis added). Finally, at no point was the Buck court then asked to define

_____

of Appeals have traditionally treated decisions from other divisions as persuasive rather than binding" to encourage rigorous debate.).

"court" as a particular "judge." In short, <u>Buck</u> and thus <u>Sherwin</u>'s reference to the rule is not illuminative of the issue here.

Next, even if the rule applied to dueling intra-court orders, that is not the situation here. The *Hagen II* order expressly allowed for transfers of trust assets "pursuant to further order of the court." As such, the *Hagen II* order expressly contemplates future judicial modification by the same court, and does not mandate such further order must issue from the same judge. Nowhere did the *Hagen II* order declare that modification could only come "pursuant to further order of the same judge."

Finally, the above analysis is also consistent with the wide deference granted to courts administering TEDRA actions. Specifically, "any party may have a judicial proceeding for the declaration of rights or legal relations with respect to any matter," which would thus include STC, which was a party to *Hagen III*. RCW 11.96A.080(1). In turn, the court has "full power and authority to proceed . . . in any manner and way that to the court seems right and proper, all to the end that the matters be expeditiously administered and settled by the court." RCW 11.96A.020(2); <u>see</u> <u>also</u> <u>In re Estate of Black</u>, 116 Wn. App. 476, 483, 66 P.3d 670 (2003). While it is not optimal that the parties did not consolidate at least some of the "common" issues in the various petitions under CR 42, the *Hagen III* court could resolve the matter before it in any proper and expeditious way.

2. Application of the Priority of Action Rule

Even if we were to apply the priority of action analysis, Jay's claims would still fail under the rule's traditional analysis. The rule is "applicable only when the

cases involved are identical as to *subject matter, parties* and *relief* . . . such that a final adjudication of the case by the court in which it first became pending would, as *res judicata*, be a bar to further proceedings in a court of concurrent jurisdiction." Sherwin, 96 Wn.2d at 80 (emphasis added).  Moreover, "courts have also looked beyond these three elements[,]" including to relevant *equitable considerations*. Bunch, 180 Wn. App. at 49-50.  As such, "the doctrine is not to be applied inflexibly."  Id. at 49.  Under the above three element test, it is clear *Hagen II* and *Hagen III* have different subject matters and sought different relief.[6]  Additionally, relevant equitable factors do not weigh in favor of applying the rule.

As to the subject matter of the two cases, *Hagen II* asserted six causes of action[7] alleging misconduct by Jay as co-trustee.  In contrast, in *Hagen III*, STC sought generalized instructions on distributing the trust's assets after months of failed mediation.  The *Hagen III* petition did not reference any alleged misconduct or present any other claims targeted against individual trustees or beneficiaries. While there may be "common" issues for purposes of CR 42, there is minimal, if any, overlap in terms of the elements or evidence required for either case.  As such, the risk of conflicting orders is negligible.

*Hagen II* and *Hagen III* also seek different relief entirely.  *Hagen II* sought damages.    In contrast, *Hagen III* asked the court to issue instructions on

---

[6] As to the second factor, STC appears to concede that the parties in *Hagen II* and *Hagen III* are identical.  We accept this concession as both petitions facially list STC and the three beneficiaries as parties.

[7] Again, these six causes of action were for conversion, breach of fiduciary duty/trust, unjust enrichment and failure to pay rent, an accounting of actions taken as former co-trustee, a declaration of respondents as financial abusers, and abusive use of litigation.

distributing trust assets, and did not seek any kind of recompense from any party. The only mention of distribution in *Hagen II* was that the "[t]rust be restrained from transferring any assets . . . to the Respondent without order of the court[.]" Even so, *Hagen II*'s request would not prevent the *adoption* of a distribution plan and only places a temporary hold on the actual distribution of assets. As noted earlier, the *Hagen* II order expressly allows modification by "further order of the court."

In sum, *Hagen II* and *Hagen III* have different starting points and proposed finish lines. As such, there is simply minimal, if any, potential for confusion or strife of contradictory orders in violation of the priority of action rule. Am. Mobile Homes of Washington, Inc., 115 Wn.2d at 317; see also In re Guardianship of Freitas, 53 Wn.2d 722, 727-28, 336 P.2d 865 (1959) ("The country has witnessed some such conflicts in which Federal and state courts of co-ordinate powers have unguardedly or unadvisedly undertaken to hamper or restrain each other's action; and the mischiefs of which such cases are suggestive are quite as likely to arise when courts existing as part of the same system intrude with their process upon each other's authority.") (quoting Maclean v. Wayne Circuit Judge, 52 Mich. 257, 259, 18 N.W. 396 (1884)).

The equities also weigh against applying the priority of action rule. First, STC is acting as a neutral party in its role as sole-trustee. In re Estate of Ehlers, 80 Wn. App. 751, 757, 911 P.2d 1017 (1996) ("a trustee is a fiduciary who owes the highest degree of good faith, diligence and undivided loyalty to the beneficiaries."). As stated in STC's *Hagen III* petition, they merely were "seek[ing] guidance from the Court regarding the disposition of real property owned by the

9

[t]rust and related trustee activities" and did not appear to advocate for any particular method for distribution. Additionally, the parties have not placed STC's conduct at issue on this appeal. STC found itself in a conundrum and sought judicial guidance. This motivation is hardly the forum shopping the rule seeks to prevent. Cf. Atlantic Cas. Ins. Co., 137 Wn. App. at 304 (castigating those who "file another action hoping to get a better result.").

Second, even now on appeal, there is no disagreement that the three siblings each will receive an equal share of the trust's assets. Rather, the question is *how* they will receive their share. Disagreements about such administrative arrangements should not delay the "expeditious[] administer[ation] and settl[ment]" of this matter. RCW 11.96A.020(2).

Stated otherwise, there is a need for finality as to these three TEDRA disputes, which have been ongoing since 2021, and the *Hagen III* court moved towards finality. Sloans v. Berry, 189 Wn. App. 368, 374, 358 P.3d 426 (2015) ("TEDRA was intended to, and does, provide flexibility to the court in resolving simple estate and trust matters expeditiously."). Jay's vague gestures to "motivations underpinning the case filings[8] and the interests of justice" fail to overcome the above equitable considerations or the court's duties to resolve this matter expeditiously.

---

[8] This argument appears to be referencing the failure of Jay's attorneys to attend the *Hagen III* hearing, which he blames on his sibling's attorneys. Ultimately, "[p]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration." Palmer v. Jensen, 81 Wn. App. 148, 153, 913 P.2d 413 (1996).

As a final note, Jay's cites to the Snohomish County Local Court Rules ("SCLCR"). Specifically, he quotes SCLCR 7, which states in part that "[e]xcept as stated below, when a motion has been ruled upon in whole or in part, *the same motion* may not be later presented to another judge" and that "[i]f a subsequent motion is made upon alleged different facts, the moving party must show by affidavit . . . what new facts are claimed to be shown." SCLCR 7(b)(2)(d)(6), (7). As established earlier, the TEDRA petitions at issue on appeal are simply not the "same motion" as they sought distinct relief. Further, the primary purpose of SCLCR 7 is to clarify the proper procedure for motions for reconsideration, as evidenced by the note to "SEE SCLCR 59 FOR MOTIONS FOR RECONSIDERATION[.]" SCLCR 7(b)(2)(d)(6). Neither the *Hagen II* or *Hagen III* orders were motions for reconsideration.[9] Thus the rule is inapposite.

## B.    Attorney Fees

STC requests attorney fees on appeal under RAP 18.1(a), which authorizes an award where "applicable law grants to a party the right to recover reasonable attorney fees or expenses on review[.]" TEDRA states that "any court on an appeal may, in its discretion, order costs, including reasonable attorneys' fees . . . in such manner as the court determines to be equitable." RCW 11.96A.150(1).

STC argues that Jay "mov[ed] for reconsideration, and now through this

---

[9] Jay's notice of appeal listed both the court's May 18, 2023, *Hagen III* order, and the order denying his motion for reconsideration. However, Jay's appellate briefing presents no substantive argument regarding this motion or order. As such, we need not address the motion on appeal. Brown v. Vail, 169 Wn.2d 318, 336 n. 11, 237 P.3d 263 (2010) ("A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment.").

appeal, premised the same blatantly flawed application of the priority of action rule[,]" causing the trust to "incur unnecessary legal expenses." "An appeal is frivolous if there are 'no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of success.'" West v. Thurston County, 169 Wn. App. 862, 868, 282 P.3d 1150 (2012) (quoting In re Recall Charges Against Feetham, 149 Wn.2d 860, 872, 72 P.3d 741 (2003)) (internal quotation marks omitted). Jay's appeal, while unsuccessful, does not reach this high bar.

Even so, we still exercise our discretion to grant STC's request for attorney fees and costs because STC, as a neutral party, is rightly seeking only to replenish the coffers of the trust it is duty bound to protect. These fees shall be paid by Jay himself or the proceeds Jay receives from the distribution. RCW 11.96A.150(a) ("attorneys' fees, to be awarded to any party: (a) From any party to the proceedings; (b) from the assets of the estate or trust involved in the proceedings; or (c) from any nonprobate asset that is the subject of the proceedings."). Our ultimate aim is to offset the financial impact of litigation on the trust itself, which Raymond created ultimately for the equal benefit of these three siblings.

## III.    CONCLUSION

We affirm.

Díaz, J.

WE CONCUR:

Brennan, J.                     Mann, J.