IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| POORMAN ENTERPRISES, LLC, a Washington Limited Liability Corporation, | )<br>)<br>)<br>) | No. 36907-2-III |
| Appellant, | )<br>) | |
| v. | )<br>) | UNPUBLISHED OPINION |
| RST PARTNERSHIP, a Washington Corporation; and JOHN DOE INCORPORATED, a Washington Corporation; and JOHN DOES I-X, | )<br>)<br>)<br>)<br>)<br>) | |
| Respondents. | ) | |

SIDDOWAY, J. — After Chelan County threatened enforcement action against RST

Partnership for marijuana production and processing going on in and around a warehouse

the partnership leased to Poorman Enterprises, LLC and Evergreen Production, RST gave

notice to Poorman that it was terminating its leases of outdoor premises. Unlike indoor

operations, RST believed Poorman's outdoor operations were likely illegal. Six months

later, Poorman brought the action below, alleging that RST's termination breached its

leases of the outdoor premises.

RST successfully moved for summary judgment and Poorman appeals, arguing

that RST breached the parties' lease agreements by failing to give 10 days' notice and an

opportunity to cure. While RST failed to honor the notice-and-cure provision, there is undisputed evidence that it terminated the leases only after Poorman violated lease terms, and Poorman fails to present evidence that it could have cured those violations and avoided the damages alleged by its complaint. We affirm.

FACTS AND PROCEDCURAL BACKGROUND

In May 2015, Poorman received a tier 3 marijuana producer license and marijuana processor license from the Washington State Liquor and Cannabis Board (WSLCB) for a warehouse property in Monitor that it leased from RST Partnership. At the time, it was leasing only interior warehouse space for its operations. After about a year of operating in the warehouse interior, Poorman entered into an agreement to lease the warehouse's roof in December 2015 (Roof Lease). Similar to all of the RST/Poorman leases entered into before and thereafter, the lease's "Use of the Premises" provision states the "LESSEE shall use the premises exclusively for the cultivation of cannabis and related activity and no other purpose." Clerk's Papers (CP) at 96, 106 (underlining omitted). In entering into the lease, the parties were aware that on September 29, 2015, the Chelan County Board of Commissioners (County Commissioners) had adopted a six-month moratorium on accepting applications for permits and licenses relating to marijuana businesses in unincorporated Chelan County. The Roof Lease provided that rent would not be payable by Poorman until April 1, 2016.

Five months into the moratorium, the County Commissioners adopted Resolution 2016-14, which permanently prohibited marijuana production and processing in unincorporated Chelan County. The resolution provided that uses "that were lawfully established and in actual physical operation prior to September 29, 2015" were "nonconforming" uses that could continue until no later than March 1, 2018. CP at 299. Producers and processors operating during this investment amortization period were required to immediately register with the county.

Poorman, deeming itself eligible, continued operating. In May 2016, Poorman and RST entered into an additional lease for approximately 16,000 square feet of ground next to the warehouse (Exterior Lease).

In September 2016, the County notified RST by letter that the marijuana operations of Poorman and another RST lessee, Evergreen Production, were in violation of the Chelan County Code and International Building Code. Relevant to this appeal, the County's letter stated that Poorman never obtained the permits necessary to conduct marijuana operations, was therefore not lawfully established prior to September 29, 2015, and was not entitled to the two-year amortization period provided by Resolution 2016-14. It stated that Poorman was also in violation of the county code by having failed to register as a producer and processor following the adoption of Resolution 2016-14. It identified specific permitting violations that Poorman would be unable to cure, since Resolution 2016-14 prohibited the County from accepting applications for permits "related to

3

marijuana or cannabis production, processing, collective gardens or cooperatives." CP at 299.

In light of the ongoing violations, the County's letter notified RST that it deemed marijuana operations at the Monitor warehouse a public nuisance. It informed RST that if it did not bring its property into compliance by October 7, 2016, it would be subject to further enforcement action. It informed RST that the penalty for continued noncompliance provided by the county code was $750 per violation, per day.

Within a week, on September 27, 2016, RST sent Poorman notice terminating the Roof Lease and Exterior Lease. Its notice stated that Poorman's Roof and Exterior Leases were "terminated, effective October 31, 2016." CP at 134. It was not until about five months after RST sent the written notice that Poorman removed the fencing and most of its property from the warehouse's roof and exterior areas.

On March 13, 2017, Poorman filed the action below, suing RST for breach of the Roof Lease and Exterior Lease. It made the following allegations as to damages:

15. As a result of Poorman's inability to use the premises in the Exterior Lease and the Roof Lease, the [WSLCB] has begun proceedings to downgrade Poorman's license from Tier 3 to Tier 2.

16. A downgrade from Tier 3 to Tier 2 represents a significant loss of business production capacity for Poorman.

17. Poorman entered into the a [sic] combination of three leases with RST, with assurances that the square foot siting of these properties would allow for Poorman to maintain a full Tier 3 Marijuana growing canopy.

4

> 18. The eviction from the "rooftop" and "outdoor" spaces have precluded Poorman from the production of marijuana at a Tier 3 canopy and has reduced the production to less than a Tier 2 canopy.

CP at 5.

When RST answered Poorman's complaint in October 2017, its affirmative defenses included a defense that Poorman had failed to comply with governmental laws, ordinances, regulations, orders and directives as required by the leases, and that Poorman had suffered no loss, since its 2016 outdoor crop had been completely harvested before RST reclaimed possession in March 2017. It asserted counterclaims for Poorman's alleged failure to repair the roof, remove fences from the roof, restore RST to full possession, and other matters.

Motion for summary judgment

Almost a year later, in September 2018, RST amended its answer and moved for partial summary judgment. Its motion anticipated that Poorman would argue that RST had failed to give a required 10-day notice and opportunity to cure. The relevant lease provisions state:

> [16.[1]] <u>DEFAULT OR BREACH</u>: Each of the following events shall constitute a default or breach of this Lease by LESSEES:
>
> . . . .
>
> d. If LESSEES shall fail to perform or comply with any of the conditions of this Lease and if the non-performance shall continue for a

---

[1] The leases incorrectly number this paragraph, which is proceeded by paragraph 15 and followed by paragraph 17 in each lease.

period of ten (10) days after notice and demand by LESSORS to LESSEES, or, if the performance cannot be reasonably had within the ten (10) day period, LESSEES shall not in good faith have commenced performance within such ten (10) day period and shall not diligently proceed to completion of performance.

. . . .

18.     LESSOR'S REMEDIES ON DEFAULT: In the event of default or breach of LESSEES, the LESSORS shall have the following remedies:

    a.     CANCELLATION:  LESSORS shall have the right to cancel and terminate this Lease by giving LESSEES not less than thirty (30) days notice of cancellation.

CP at 100-01, 109-10.

RST argued that summary judgment was appropriate notwithstanding its failure to give notice and an opportunity to cure because Poorman "could not have cured its default." CP at 51 (citing *DC Farms, LLC v. Conagra Foods Lamb Weston, Inc.*, 179 Wn. App. 205, 224, 317 P.3d 543 (2014)).  RST's motion was supported by a declaration of Todd Davidson, RST's managing partner.

**Poorman impleads the County and, after the County impleads others, Poorman moves to consolidate**

The day after RST filed its motion for summary judgment, Poorman filed an answer to RST's amended counterclaims.  It included a third party claim against the County and its County Commissioners, individually (hereafter collectively "the County"), alleging they were "liable to Poorman in whole or in part for RST's counterclaims." CP at 61.

6

The County's response to Poorman's third party complaint asserted what it characterized as "fourth party" claims against Poorman, RST, and Evergreen Production. CP at 149-54. It sought an order declaring the Monitor warehouse a public nuisance and its operations a violation of the county code, as well as a warrant of abatement.

Thereafter, and before responding to RST's motion for summary judgment, Poorman filed a motion to consolidate this action with a second action it had filed in April 2017 against the County for unconstitutional impairment of contractual relationships, tortious interference with business expectancy, a writ of mandamus, and declaratory relief. In May 2017, the County had answered Poorman's complaint in that matter and asserted counterclaims against Poorman, RST, and Evergreen for a declaratory judgment and warrant of abatement.

RST and the County both opposed consolidation. RST did not dispute that some common facts and legal issues were presented in the two actions but it identified other legal principles and issues raised in Poorman's 2017 action against the County that were different. It argued that consolidation would result in unnecessary delay because its motion for summary judgment was set for hearing in February 2019 and trials on liability and damages were set in March and May.[2] It argued that no discovery had been

---

[2] At the hearing on the motion to consolidate, RST represented that it had been pushing to set a hearing for its summary judgment motion since September 2018, but as a result of judicial appointments and elections it had been unable to get a hearing date before February.

conducted in Poorman's 2017 action against the County and trial in that matter had not yet been scheduled. It also disclosed that consolidation would create a conflict of interest for J. Patrick Aylward and his firm, who were representing RST. Mr. Aylward's firm was representing the County in other, unrelated matters and the County would object to their representation of RST in Poorman's 2017 action against the County.

The County similarly argued that Poorman's 2017 action against it had "largely been held in abeyance since inception." CP at 171. It also argued that Poorman's other action presented issues relating to the County's evaluation and regulation of marijuana-related land uses that had little or nothing to do with the primary claims in this action.

The trial court denied the motion to consolidate, finding that while there were some common questions of fact and law in the two matters, consolidation would cause a substantial and unnecessary delay. It explicitly cited the pending summary judgment motion and trial setting in this action.

*After denial of consolidation, the summary judgment motion proceeds*

Poorman filed its response to RST's motion for summary judgment in mid-February 2019. It argued that its operations were grandfathered for the investment amortization period by the resolution, since it was lawfully established and in actual operation before September 29, 2015.

It also argued that nothing in Resolution 2016-14 invalidated the leases or frustrated their purpose since they allowed the premises to be used for "the cultivation of

cannabis *and related activity*," while the resolution only prohibited the "operation of . . . cannabis production and processing." CP at 200 (boldface omitted) (alteration in original). Its response brief suggested that either storage or a hydroponic equipment manufacturing operation could qualify as "related activity." *Id.* (boldface omitted). Because the leases included related activities as a permitted use, Poorman asserted it could have cured any violations had RST complied with the leases' notice-and-cure provision. The only evidence offered in support of Poorman's response were copies of resolutions and meeting minutes of the County Commissioners.

In its reply brief, RST disputed Poorman's argument that its operations were grandfathered for the amortization period and characterized Poorman as making only legal arguments mischaracterized as disputed facts. It pointed out that Poorman's intention in entering into the leases was to maximize the plant canopy available under its license and an argument about theoretically possible ancillary uses was insufficient.

The County filed a response to RST's motion for summary judgment, explaining it was only addressing Poorman's assertion that its operations were lawfully established prior to September 29, 2015. Among other arguments, the County presented evidence and argument that Poorman could not demonstrate that it obtained all necessary permits before September 29, 2015.

A couple of days after the County filed its response, Poorman and RST filed a stipulation dismissing, without prejudice, RST's counterclaims against Poorman and Poorman's third party claim against the County.

RST's summary judgment motion was heard a couple of weeks thereafter. Counsel for the County appeared and argued, without objection from Poorman or RST. The trial court took the issue under advisement and issued a memorandum opinion in May 2019. It found that Poorman's operations were not lawfully established before September 29, 2015 as a matter of law, because Poorman had not obtained needed permits. Given that the leases were for a purpose that Poorman could not pursue, it found that they were for an unlawful purpose and could not be enforced. It found RST's alleged failure to give notice and an opportunity to cure "academic under the circumstances." CP at 491. Finding the leases void and unenforceable, it granted RST's motion for summary judgment and dismissed Poorman's complaint. Poorman appeals.

ANALYSIS

Poorman assigns error to the trial court's denial of its motion to consolidate this action with its 2017 action against the County and to its order granting summary judgment to RST and dismissing its complaint. In its responsive brief, RST makes a threshold motion to dismiss the appeal as moot. We first address the motion to dismiss the appeal as moot.

10

I. POORMAN'S APPEAL IS NOT SHOWN TO BE MOOT

RST moves to dismiss Poorman's appeal as moot, claiming that even if Poorman prevails on appeal, there are no damages it can recover on remand. Its brief describes requests for admission served on Poorman to which Poorman did not timely respond, with the result that the matters are deemed admitted. The requests asked Poorman to admit it suffered no loss of profit on its 2016 cannabis crop from premises let under the Roof and Exterior Leases because it was able to complete its harvest.

Under RAP 18.9(c)(2), we may dismiss an appeal as moot. "A case is moot when it involves only abstract propositions or questions, the substantial questions in the trial court no longer exist, or a court can no longer provide effective relief." *Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 99, 117 P.3d 1117 (2005).

RST's requests for admission are not in the record on appeal nor is any declaration establishing that the requests were not timely answered. RST moved to supplement the appellate record with unanswered copies of the requests but with respect to those records, its motion was denied. And as Poorman points out in its reply, its complaint sought damages for the downgrading of its tier 3 production license.

RST does not demonstrate that the appeal is moot.

II.   THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN DENYING THE MOTION TO CONSOLIDATE

Poorman contends the trial court abused its discretion when it denied Poorman's motion to consolidate.

CR 42(a) provides in relevant part that "[w]hen actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions [or] may order all the actions consolidated." The rule provides broad authorization to trial courts to make orders concerning proceedings "as may tend to avoid unnecessary costs or delay." *Id.* The rule is permissive and discretionary with the trial court. *See Leader Nat'l Ins. Co. v. Torres*, 51 Wn. App. 136, 142, 751 P.2d 1252 (1988). A decision not to consolidate "will be final unless there has been a clear abuse of discretion, and if the moving party can show prejudice." *Nat'l Bank of Wash. v. Equity Inv'rs*, 86 Wn.2d 545, 561, 546 P.2d 440 (1976).

No clear abuse of discretion by the trial court is shown, nor is prejudice. Permitting the summary judgment motion to go forward, at a minimum, would serve judicial economy by testing whether there was any factual dispute about certain issues common to both actions. As was borne out when the summary judgment was granted, allowing RST's motion to proceed proved to be the most expeditious way to resolve

12

whether Poorman's marijuana production and processing operations were lawfully established prior to September 29, 2015.

It appears that one reason for Poorman's motion to consolidate might have been to delay resolution of issues presented by the County's counterclaim that it was unprepared to address. But if that was the case, it should have made a CR 56(f) motion for a continuance. The trial court did not abuse its discretion when it denied the motion to consolidate and allowed the summary judgment motion to proceed.

III.     SUMMARY JUDGMENT WAS PROPER

In challenging the trial court's order granting summary judgment, Poorman first advances a procedural argument: for the first time on appeal, it contends the trial court should not have entertained evidence and argument from the County. Substantively, it argues that summary judgment was improper because there were genuinely disputed issues of material fact.

A.     The County's evidence and argument was considered by the trial court
         without objection

Poorman argues that once it entered into a stipulation with RST to dismiss RST's counterclaims and Poorman's third party contribution claim against the County without prejudice, the County "lost standing" to be heard on the summary judgment motion. Appellant's Br. at 18. In the next breath, it invokes the "priority of action" doctrine as a basis on which the trial court should have refused to hear from the County. *Id*. The

13

County's threshold response is that if there was error, it was not preserved because Poorman did not object to its evidence or argument in the trial court. *See* RAP 2.5(a).

"Standing," a concept that is applied to plaintiffs, not defendants, means "[a] party's right to make a legal claim or seek judicial enforcement of a duty or right." BLACK'S LAW DICTIONARY 1695 (11th ed. 2019). Having been brought into this action by Poorman, the County had a right to participate in accordance with the civil rules.

The priority of action doctrine "holds that 'the court which first gains jurisdiction of a cause retains the exclusive authority to deal with the action until the controversy is resolved.'" *State v. Stevens County Dist. Ct. Judge*, 7 Wn. App. 2d 927, 933-34, 436 P.3d 430 (quoting *Sherwin v. Arveson*, 96 Wn.2d 77, 80, 633 P.2d 1335 (1981)), *aff'd*, 194 Wn.2d 898, 453 P.3d 53 (2019). It does not apply any time two similar cases are pending; there must be identity of subject matter, relief and parties. *Am. Mobile Homes of Wash., Inc. v. Seattle-First Nat'l Bank*, 115 Wn.2d 307, 317, 796 P.2d 1276 (1990). The Washington Supreme Court has declined to adopt a bright line rule favoring the case first filed, holding that courts should also consider equitable factors including the convenience of witnesses and the interests of justice and the parties' possible motivations for their filing decisions. *Id.* at 323. If all of the required identities existed between this action and Poorman's 2017 action against the County (they do not) and if the doctrine were to be applied, it would dictate that identical issues should be resolved in *this action*,

since this action was the first to be filed. Poorman's reliance on standing and the priority of action doctrine is misplaced.[3]

Poorman did not move to strike the County's briefing or evidence on any basis, and did not object to the County's argument when the motion was heard. The order granting summary judgment states that the County appeared through counsel at the summary judgment hearing and that the trial court considered the County's submissions. The order is signed by Poorman's counsel, indicating that it is "[a]pproved as to form and notice of presentment waived." CP at 497.

There was no argument made or evidence offered by the County that could not have been made or offered by RST. Had Poorman made a timely objection to the County's participation, RST could have explicitly adopted the County's arguments and resubmitted the County's evidence as its own. By presenting an order on summary judgment that reflects the trial court's reliance on the County's argument and evidence, RST implicitly adopted the County's evidence and argument. We will not entertain, for the first time on appeal, an argument that the trial court erred in relying on that evidence and argument.

---

[3] No one argued in the trial court that if the County's claims against the "fourth party" defendants were true fourth party claims under CR 14 (arguably they were not), then they were rendered pointless when RST's counterclaims and Poorman's third party claims were dismissed.

B.      Summary judgment was appropriate where Poorman failed to present evidence creating a genuine issue of its ability to cure defaults under the Roof and Exterior Leases

The evidence before the trial court on summary judgment established that prior to September 29, 2015, none of Poorman's marijuana production and processing operations at the Monitor warehouse were lawfully established. Its Roof and Exterior Leases provided in relevant part that in using the premises exclusively for the cultivation of cannabis and related activity, Poorman "shall comply with all governmental laws, ordinances, regulations, orders and directives and all insurance requirements applicable to LESSEE'S use of the premises." CP at 96-97, 106. Poorman agreed that in the event it made alterations, additions or improvements to the leased premises, it would "comply with all building and safety laws, ordinances, rules and regulations." CP at 97, 106. Yet a declaration from Bob Plumb, the Chelan County Fire Marshal, established that a marijuana extraction system had been installed and was in use in Poorman's premises, and Poorman had never obtained a permit for the system required by WAC 51-54A.3801.5. A declaration from Angel Hallman, a code enforcement manager with the Chelan County Department of Community Development, established that based on a site visit to Poorman's premises and a review of permitting records, Poorman had failed to obtain permits required for its installation and operation of an extractor, its construction of interior walls, its erection of fences, and its change in the use/occupancy of the warehouse premises.

16

Also in evidence were declarations filed in a lawsuit that Poorman had brought against Iron Fist Fabrication, the manufacturer of its extractor. Poorman evidently alleged in the lawsuit that the extractor did not work. A declaration from Carl Schenk, the owner of Iron Fist, explained that a botanical extractor is a machine used to create certain extracts; in the case of marijuana, an extractor creates marijuana concentrates, extracts, waxes and oils. He testified that when he sold an extractor to Poorman, he notified a Poorman principal, Scott Edson,

> that Washington State WAC regulations require marijuana processors to obtain necessary permits before an Extractor can be used to process marijuana. These regulations include specific requirements for the build out of the "processing room." Since the Extractor uses flammable solvents, fire marshal inspection is also required before the extractor can be installed.

CP at 386.

In a declaration from Reid O'Donnell, an installation technician for Iron Fist, he testified that he was assigned to assist Poorman with installation of its extractor but arrived to find that Poorman had already assembled the extractor and had it up and running. Mr. O'Donnell testified that when he asked Poorman personnel to verify that they had received required sign-offs from the electrical inspector and fire marshal, they refused to produce the documentation. Mr. O'Donnell testified:

> 11. I told [a Poorman employee] that under Washington law, these sign offs are necessary prior to me doing the installation and providing the pressure test certification. I told them that once the sign-offs were received, and the solvent drained from the extractor, I would come back and do a reinstall for them and run the vacuum and

17

> pressure tests. They could then get fire marshal approval for the extractor, and thereafter I would verify that the system worked with a solvent distillation run.
>
> 12. I never heard back from them.

CP at 379.

The burden is on the person asserting a nonconforming use to prove its lawful existence. *City of Univ. Place v. McGuire*, 144 Wn.2d 640, 647, 30 P.3d 453 (2001); *State ex rel. Lige & Wm. B. Dickson Co. v. County of Pierce*, 65 Wn. App. 614, 624, 829 P.2d 217 (1992). Obtaining necessary permits is required before a use can be considered "legally established." *First Pioneer Trading Co., Inc. v. Pierce County*, 146 Wn. App. 606, 616-17, 191 P.3d 928 (2008). Poorman did not present any evidence contravening the evidence that it failed to obtain required permits. The summary judgment record supports a determination as a matter of law that Poorman had violated lease terms requiring it to obtain needed permits and, since the adoption of Resolution 2016-14 made it impossible to obtain the permits for any marijuana-related use, it could not cure the violations.

In a last ditch effort to avoid summary judgment, Poorman argued that if it had been given the required 10-days' notice and opportunity to cure in September 2016, it could have ceased its illegal marijuana production and processing operations on the Roof and Exterior Lease premises and embarked on some different, legal, use. To cure, it would also have to remove the nonpermitted fences. Its substituted use would have to

18

both comply with the lease requirement that it be "the cultivation of cannabis and related activity" and still be capable of being permitted in unincorporated Chelan County, which no longer accepted applications for any permit "related to" marijuana or cannabis production or processing. And the loss of the substituted use would have to have caused Poorman damage, an essential element of a breach of contract claim.

Unlike the plaintiff in *DC Farms*, Poorman offered no evidence that it could and would have accomplished such a cure. RST argues that Poorman can only make the argument that it could have cured if it actually *did* cure—with that, we disagree. But Poorman needed to present evidence that without the ability to produce and process marijuana it could still prove the elements of its breach of contract claim. A party's response to a motion for summary judgment must set forth specific facts showing there is a genuine issue for trial. CR 56(e). The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Modumetal, Inc. v. Xtalic Corp.*, 4 Wn. App. 2d 810, 822, 425 P.3d 871 (2018), *review denied*, 192 Wn.2d 1011, 432 P.3d 793 (2019).

Absent evidence from Poorman, the evidence in the summary judgment record is that Poorman's marijuana production and processing material were not removed for many months. The evidence established that Poorman would have to thread a fine needle to demonstrate a profitable use that would comply with the "permitted use" provisions of its leases and still be capable of being permitted by the County. Absent any evidence

from Poorman, the undisputed evidence in the summary judgment record is that the only damage alleged in Poorman's complaint—its inability to maintain a full tier 3 growing canopy at the Monitor warehouse—would have happened even if RST had not terminated the leases.

Because undisputed evidence establishes that Poorman had committed violations of the lease terms, and it failed to respond to RST's motion with evidence that it could and would have cured the violations and still have sustained damage as alleged by its complaint, summary judgment was appropriate. We need not reach the other arguments made by the parties.

IV.    Attorney fees

Citing RAP 18.9, RST requests an award of reasonable attorney fees on appeal. It characterizes Poorman's appeal as frivolous and alternatively requests an award of fees under the attorney fee provision in the parties' leases.

Poorman's appeal was not frivolous, but the attorney fee provision in the leases applies. Paragraphs 27 of the Roof Lease and Exterior Lease provide that "[i]n the event that an attorney is retained for enforcement of this Lease or in the event a lawsuit is commenced, the prevailing party shall be entitled to recover costs of such enforcement or costs of suit, including reasonable attorney fees." CP at 103, 113. Perceiving that language to favor a party seeking to enforce or enforcing the lease, RST points out that RCW 4.84.330 renders any unilateral fee provision bilateral.

20

Poorman responds, without citation to authority, that "RST's argument that the lease is illegal and unenforceable, but nonetheless supports fees is meritless." Appellant's Reply Br. at 24.

While RST took the position the leases were illegal and unenforceable it is still entitled to rely on the attorney fee provision, since Poorman, claiming breach, was seeking to enforce them. *See, e.g., Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 839, 100 P.3d 791 (2004) ("Attorneys fees and costs are awarded to the prevailing party even when the contract containing the attorneys fee provision is invalidated.").

We award RST its reasonable attorney fees on appeal subject to its compliance with RAP 18.1(d).

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, A.C.J.

_____
Lawrence-Berrey, J.

21